The Motion to Approve Swallen Family Settlement filed by the UCC is denied.

So Ordered.

**In re SWALLEN'S, INC., Debtor.**

**Bankruptcy No. 95–14476.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

June 10, 1997.

Thomas W. Coffey, Cincinnati, OH, for Debtor.

Donald J. Rafferty, Cincinnati, OH, for UCC.

Robert A. Goering, Timothy J. Hurley, Cincinnati, OH, Co–Counsel for Swallen Family.

Alan J. Statman, Cincinnati, OH, for Fifth Third.

James R. Cummins, Kevin E. Irwin, Cincinnati, OH, Co–Counsel for Debenture Holders.

Mark A. Greenberger, Cincinnati, OH, for Mars.

**ORDER RE MARS SETTLEMENT**

BURTON PERLMAN, Bankruptcy Judge.

Debtor in this Chapter 11 case had operated retail department stores prior to filing their bankruptcy case. It continued as an operating business until a short time after its filing, at which time it ceased operations. While it remains in Chapter 11, it is now in a liquidation mode. Debtor continues to own certain real estate. The Official Unsecured Creditors Committee ("UCC") has been au-

thorized by this court to act in the name of the debtor regarding the disposition of that real estate. The UCC has entered into a Settlement Agreement which provides for such disposition. The UCC here moves for approval of that Settlement Agreement.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (O).

Not long before the bankruptcy filing, certain stock purchase transactions occurred pursuant to which ownership of the equity interests in the debtor were transferred. In order to fund such transfers, a series of sale-leaseback agreements were entered into between the debtor and Mars Partnership ("Mars"). Mars is exclusively owned and controlled by Hari Budev and Chandu Budev. Debtor sold three of its most valuable properties to Mars as follows:

1. The debtor sold its Glenway Avenue (Western Hills) property to Mars for the case purchase price of $6.75 million.

2. The debtor sold its Princeton Pike (Tri–County) property to Mars in exchange for the assumption by Mars of certain IRB indebtedness outstanding on that property in the amount of $5.005 million.

3. The Debtors sold its Red Bank Road property to Mars in exchange for a subordinated, secured 30–year Promissory Note in the principal amount of $2.245 million.

The Glenway Avenue, Princeton Pike, and Red Bank Road properties mentioned above shall be referred to collectively as the "Swallen's Properties". At the time of the Debtor's transfer of the Swallen's Properties to Mars, they had an aggregate appraised value of nearly $18 million.

Contemporaneous with Debtor's transfer of the Swallen's Properties to Mars, Mars entered into a series of loan agreements with the Fifth Third Bank through which Mars obtained the funding necessary to acquire the Swallen's Properties from the Debtor. In exchange for the financing, Fifth Third Bank was granted a senior mortgage on each of the Swallen's Properties.

Simultaneously with the foregoing, Mars and the Debtor also entered into a series of long-term, triple net leases, (collectively the "Mars Leases") for each of the Swallen's Properties under which, *inter alia*, the Debtor became obligated to pay substantial sums to Mars for annual rentals, as well as real estate taxes and all other amounts arising for maintenance and operation for each of the Swallen's Properties.

The principal terms of the Settlement Agreement are the following:

1. Upon approval of the Settlement, Mars and the Budevs will transfer ownership and control of the Swallen's Properties to Fifth Third Bank and/or the Committee, respectively, as follows:

| Property | Transferee |
| --- | --- |
| Glenway Ave. (Western Hills) | Fifth Third Bank |
| Princeton Pike (Tri–County) | Fifth Third Bank |
| Red Bank Road | Committee (or its designee) |

The transfer of the Swallen's Properties will be accomplished through either

(i) consensual foreclosure;

(ii) delivery of a deed in lieu of foreclosure; or

(iii) by limited warranty or quit claim deed.

2. Upon transfer of the Red Bank Property to the Committee (or its designee), Fifth Third Bank will release its mortgage lien on the property.

3. The Committee shall be free to sell or otherwise dispose of the Red Bank Property, in its sole discretion, the proceeds of any such disposition shall ensue to the sole benefit of the Debtor's general unsecured creditors; *provided, however,* that $250,000 of any disposition proceeds will be deposited in an interest bearing escrow (the "Deficiency Es-

crow") at Fifth Third Bank pending Fifth Third Bank's disposition of the Western Hills and Tri–County properties to cover its deficiency claim, if any, resulting from the disposition of the Swallen's Properties, together with such other side collateral that the Budevs have delivered to Fifth Third Bank. The Deficiency Escrow will last for not more than 2 years, after which it shall be distributed to the Debtor's creditors, unless earlier terminated and distributed ratably as between the Committee and Fifth Third Bank under the terms of the Settlement Agreement.

4. The Committee, on behalf of the Debtor's unsecured creditors, has also preserved the opportunity to share in any "upside" that may be realized upon a disposition of the Western Hills and Tri–County properties after satisfaction of Mars' indebtedness to Fifth Third Bank; *provided, however,* that such upside potential is limited to not more than $312,000.

5. The obligations by Mars and the Budevs under the Settlement Agreement shall be secured by, *inter alia,* the pledge of cash or marketable securities in an amount of not less than $312,000.00.

6. Upon approval of the Settlement, the Debtor's estate shall deliver a general release to Fifth Third Bank; the Debtor's estate shall deliver a conditional release to Mars and the Budevs, respectively, which release shall be conditioned upon their satisfaction and performance of all of their respective obligations under the Settlement. Fifth Third Bank will deliver comparable releases.

7. Mars and the Budevs will each deliver to Fifth Third Bank and the Debtor's estate unconditional general releases upon approval of the settlement.

In evaluating the Settlement with Mars, the following criteria are applicable: ... most circuit courts that have considered the issue have adopted a uniform standard by which the bankruptcy judge or other trial officer should be governed in the hearing on a motion to approve a compromise. According to these cases, the court should consider: (a) the probability of success in the litigation; (b) the difficul-

ties, if any, to he encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In other words, therefore, a compromise will be approved when it is both "fair and equitable" and in the best interests of the estate.

10 *Collier on Bankruptcy* § 9019.02 (15th Rev. ed.1996) (footnotes omitted)

The UCC in presenting the motion to approve the settlement with Mars, has made a persuasive showing in its memorandum and in oral argument that all of these criteria when properly evaluated work in favor of approval of the settlement. We approve the motion of the UCC for the reasons stated in its memorandum. While initially certain creditors objected to the settlement, largely on grounds that adequate information had not been made available, that objection has been withdrawn.

The motion of the UCC to approve the settlement with Mars, Hari Budev, Chandu Budev, and the Fifth Third Bank is granted.

So Ordered.